Submitted on briefs December 30, 1988, affirmed on appeal; cross-appeal dismissed July 12, reconsideration denied September 29, petition for review denied November 16, 1989 (308 Or 500)

**BOOTHE,**
*Respondent - Cross-Appellant,*

*v.*

**RISE,**
*Appellant - Cross-Respondent.*

(A8610-06105; CA A47309)

777 P2d 412

Jas J. Adams, Portland, filed the briefs for appellant - cross-respondent.

Ferris F. Boothe, Portland, filed the brief *pro se* for respondent - cross-appellant.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant Rise, a former client of plaintiff, appeals from a judgment awarding plaintiff $18,000 plus interest and disbursements.[1] Rise argues that the trial court erred by construing the parties' contingent fee agreement to mean that plaintiff is entitled to 45% of the value of the fee simple interest in certain real property ("Reedway residence") owned by Rise and, as a result, by awarding plaintiff more damages than he is entitled to.[2]

Plaintiff represented Rise in an action on a claim that Rise had a possessory life estate in the Reedway residence occupied by Steckel and for damages equal to the fair rental value of the residence during the years of Steckel's occupancy. Rise lost at the first trial, but prevailed on appeal. *Rise v. Steckel*, 59 Or App 675, 652 P2d 364, *rev den* 294 Or 212 (1982). On retrial, Rise was awarded possession of the Reedway residence as life tenant and damages of $41,887.91, plus $1,095.91 as his costs and disbursements on appeal.

Steckel still owned the remainder interest in the Reedway residence.[3] He died, and the judgment was levied against and bid in on Steckel's interest; that ultimately resulted in Rise obtaining the fee title. Plaintiff then asked Rise to sign a note secured by a deed of trust on the Reedway residence as payment for legal representation. Rise refused. Plaintiff sued for "a [declaratory judgment] of rights under the 'contingent fee agreement' as to whether it is enforceable and to what extent it is enforceable." In the alternative, he asked for the reasonable value of services performed.

The lower court found the agreement enforceable and that

---

[1] Plaintiff has, in effect, moved to dismiss his cross-appeal in his brief. We allow the motion.

[2] We stayed execution of the judgment on the condition that Rise sign a promissory note and trust deed in the amount of the judgment, secured by the Reedway residence.

[3] The fee owner, Alice Steckel, while married to Steckel, had conveyed a life estate to herself and Steckel, providing that, if he were to survive her, his life estate would end if he remarried. If he remarried, Rise would then have a life estate, so long as he paid the taxes levied on the residence when due. Marilyn Steckel held the remainder interest. Alice died; Steckel remarried, entitling Rise to a life estate. Steckel continued to live in the house and obtained Marilyn's remainder interest.

"[t]he ultimate 'recovery' of the judgment secured by plaintiff's efforts on defendant's behalf was a fee interest in the [residence].

"6. The residence was appraised at $40,000 in March of 1980. While plaintiff has offered no evidence of present value or value at the time of recovery, the appraisal is prima facie evidence of value which was not challenged or controverted by defendant and thus becomes the best evidence of value at recovery."

Rise argues that, under the agreement, plaintiff is only entitled to 45% of the value of the *remainder,* not the fee simple. He also argues that, because plaintiff offered no evidence of the value of the remainder, Rise is entitled to a judgment as a matter of law.

The agreement provides, in part:

"Our attorneys fees will be contingent upon our obtaining recovery on your behalf in this case. Our fees will be as follows:

"30% of any net recovery if there is a settlement before trial;

"40% of any recovery made after trial, but before an appeal, and

"45% if no recovery is obtained until after an appeal of the case to the Oregon Court of Appeals or Oregon Supreme Court[.]

"Net recovery means the amount of monies recovered as a result of our efforts, after deduction of the out-of-pocket expenses advanced by you.

"If the recovery is of goods; for example, furniture, rather than money, and we cannot agree upon the value of the furniture, we will then agree upon an appraiser who will establish an evaluation of the property for purposes of determination of our fee. We will not require that such a fee be paid in cash; only that the fee be secured under Oregon law and the fee will be payable when the property is ultimately sold.

"It is our objective that a judgment will be obtained against James R. Steckel, which judgment may be collected against certain real property. If you, as judgment creditor, become the owner of said real property, you will agree to sign a note secured by a mortgage or Deed of Trust for our interest in such recovery as represented by the real property and to pay interest at 9% and to re-finance said residence within five years in order to pay our fee."

Defendant's view of the case is epitomized in this excerpt from his reply brief:

"The trial court's error of law was in concluding that plaintiff is entitled under the fee agreement to a percentage of whatever was 'ultimately' recovered. Plaintiff's right to an attorney fee is limited by the terms of the contingent fee agreement to 45 percent of whatever real property interest was purchased with a money judgment. Plaintiff had no right under the terms of that agreement to combine defendant Rise's right to a life estate and the possession of the life estate with the purchase of the remainder interest in order to figure his fee on the basis of the fee simple."

Taking the contingent fee agreement by its four corners, it might be expected that plaintiff would respond that the agreement really is quite simple and straightforward. If recovery were obtained only after Court of Appeals or Supreme Court review, the fee would be 45 percent of the money recovered in the action, less expenses advanced by defendant. The other paragraphs in the agreement are only for the purpose of determining *how* the fee would be paid if the defendant finally became the owner of real or personal property, instead of money, as a result of the litigation. The agreement therefore plainly provides that plaintiff is entitled to 45 percent of $41,887.91, less whatever expenses defendant might have advanced. That amount is to be secured by a note and a mortgage or deed of trust on the Reedway residence.

Were that plaintiff's position, and had the case been tried on that theory, the judgment here would be affirmed, albeit on a theory different from the trial court's. For reasons that are not at all clear, plaintiff seems to agree that the question before us is whether the *whole value* of the property, or only of the remainder interest, is the base of measuring the contingent attorney fee. That is, the trial judge said that plaintiff is entitled to 45 percent of the value of the property—and plaintiff accepts that measure and that conclusion.

The parties therefore have agreed on what the contest is about, but they do not agree on what problem is being put to us. Essentially, Rise argues that the only question before us is one of interpreting the contract and that its meaning is perfectly clear. Plaintiff argues that everything in the case is a question of fact and that there is substantial evidence

to support the trial court's findings, which, according to plaintiff, lead inexorably to the trial court's result.

Although it may be that not every fact found by the trial court relates logically to the ultimate issue, each finding is supported by evidence in the record, including the value of the Reedway residence fee. The primary issue is the intent of the parties to the contingent fee agreement. *Northwest Wholesale Stationers v. McCormack,* 96 Or App 299, 302, 772 P2d 1630 (1989). When Rise engaged plaintiff as his attorney, he effectively had no interests in the property. He had no established right to a life estate, no established right to possession of the property and, certainly, no claim to the fee. Plaintiff's efforts secured a reformation of the underlying deed, which was necessary to support Rise's claim to a life estate. After the trial court held that Rise was barred by laches, plaintiff secured a reversal and a new trial, in which he established Rise's right to a possessory life estate and secured a judgment for the value of the possession of which he had been deprived by Steckel. Plaintiff levied execution on the property and thereby obtained a fee title for Rise that was worth, according to the only evidence in the record, $40,000. Everything that Rise has today in respect to the Reedway residence, he owes to the services of plaintiff. The only reasonable reading of the contingent fee agreement is that Rise agreed to pay the contingent amount, calculated on the amount of the judgment awarded, and to secure that amount by a deed of trust and a promissory note. That plaintiff asserts a claim to less than the express words of the agreement seem to entitle him inures to Rise's benefit and cannot be a basis for us to say that the trial judge was wrong.

Affirmed on appeal; cross-appeal dismissed.